Bowman *v.* Woods.

---

Ig 441<br>105 299

## Bowman *v.* Woods.

In an action for malpractice, as a physician, evidence to prove that defendant's treatment of the case was according to the botanic system of practice and medicine which he professed and was known to follow is admissible.

There is no particular system of medicine established or favored by the laws of Iowa; no system is prohibited.

The law implies an undertaking, on the part of every medical practitioner, that he will use an ordinary degree of care and skill in his practice, and will hold him liable for gross carelessness, or unskilfulness.

A physician is expected to practice according to his professed and avowed system.

Standard medical books are admissible as evidence of the author's opinions upon questions of medical skill and practice, involved in the trial of a cause.

Error, *to Van Buren District Court.*

*Samuel W. Summers,* for the plaintiff in error.

*James Baker,* for the defendant.

Bowman *v.* Woods.

*Opinion by* GREENE, J.   The proceedings below were against Bowman for malpractice as a physician, in a case of accouchement.   Verdict for the plaintiff, and his damages assessed at fifty dollars.   The bill of exceptions gives the substance of a Dr. Coffin's testimony, who it appears. was called in as consulting physician, about thirty-six hours after the delivery.   At that time Dr. C. states that the after-birth was not removed, and the patient was greatly prostrated by the severity of the labor and the loss of blood; that she was also suffering from a distention of the bladder, which had not been evacuated since parturition.   He gave it as his opinion that the *placenta,* and the distended state of the bladder, should have been removed at a much earlier period; and that such delay would be likely to produce puerperal fever.   Several other physicians, as witnesses, concurred in Dr. Coffin's views of the practice.

The defendant then offered to prove that he was a botanic physician, and that according to the botanic system of practice and medicine, it is considered improper to remove the placenta, and that it should be permitted to remain till expelled by efforts of nature.   But the proof of these facts being objected to, was ruled out by the court.   In this we think there is error.   As yet there is no particular system of medicine established or favored by the laws of Iowa.   And as no system is upheld, none is prohibited.

The regular, the botanic, the homœopathic, the hydropathic, and other modes of treating diseases, are alike unprohibited; and each receives more or less favor and patronage from the people.   Though the regular system has been advancing as a· science for centuries, aided by research and experience, by wisdom and skill, still the law regards it with no partiality or distinguishing favor; nor is it recognized as the exclusive standard or test by which the other systems are to be adjudged.   The evidence of the experienced practitioner of either system, is equally admissible in giving opinions upon questions of medical skill.   But in the question before us, the objection does not appear to be to the qualification or skill

Bowman *v.* Woods.

of the witnesses, but rather to the facts which the defendant proposed proving by them. In those facts we can see nothing irrelevant or inadmissible; and as matter of defence to the jury, the defendant was entitled to the benefit of them.

A person professing to follow one system of medical treatment, cannot be expected by his employer to practise any other. While the regular physician is expected to follow the rules of the old school in the art of curing, the botanic physician must be equally expected to adhere to his adopted method. But on the part of every medical practitioner, the law implies an undertaking that he will use an ordinary degree of care and skill in medical operations, and he is unquestionably liable for gross carelessness or unskilfulness in the management of his patients; and still the person who employs a botanic practitioner, has no right to expect the same kind of treatment or the same kinds of medicine that a regular physician would administer. The law does not require a man to accomplish more than he undertakes, nor in a manner different from what he professes. Therefore, if in this case, the defendant below could show that he was employed as a botanic physician, and that he performed the accouchement with ordinary skill and care, in accordance with the system he professed to follow, we should regard it as a legal defence. It would show a full compliance with his profession and undertaking; and if injury resulted from it to the plaintiff, he could properly blame no one but himself. Story, in his work on Bailment, sec. 435, says: "But even where the particular business or employment requires skill, if the bailee is known not to possess it, or he does not exercise the particular art or employment to which it belongs, and he makes no pretension to skill in it.; then if the bailor with full notice trusts him with the undertaking, the bailee is bound only for a reasonable exercise of the skill which he professes, or of the judgment which he can employ; and if any loss ensue from his want of due skill, he is not chargeable. Thus, (to put a case borrowed from the Mahomedan law,) if a person will knowingly employ a common mat ma-

ker to weave or embroider a fine carpet, he may impute the bad workmanship to his own folly.   So, if a man who has a disorder in his eyes should employ a farrier to cure the disease, and he should lose his sight by the remedies prescribed in such cases for horses, he certainly would have no legal cause of complaint."   Judge Story then goes on to state that in all such cases, the employer ought properly to attribute the loss or injury to his own negligence and mismanagement. The case of the *Commonwealth* v. *Thompson*, 6 Mass. 134, exhibits a revolting instance of malpractice, in which *lobelia* was administered to such indiscriminate excess as to occasion death.   Still it was held that if a medical pretender administers medicine to his patient with an honest intention and expectation of a cure, but which causes death, the party prescribing cannot be adjudged guilty ; and that there is no law which prohibits any man from prescribing for a sick person with his consent, if he honestly intends to cure him by his prescription.

The people are free to select from the various classes of medical men, who are accountable to their employers for all injuries resulting from a want of ordinary diligence and skill in their respective systems of treating diseases.   It is to be lamented, that so many of our citizens are disposed to trust health and life to novices and empirics, to new nostrums and new methods of treatment.   But these are evils which courts of justice possess no adequate power to remedy.   Enlightened public opinion, and judicious legislation, may do much to discountenance quackery, and advance medical science.

The only other error assigned in this case, which we deem it necessary to notice, is in relation to the admissibility of medical books as evidence.   It appears that the defendant offered to introduce certain medical books, which witnesses had declared as standard works on botanic medicine, and from which they claimed to have derived much of their professional knowledge, but, on objection, the court excluded them.   The authorities upon this point are not uniform ; but the district judge decided in conformity to the prevailing de-

Bowman *v.* Woods.

cisions of at least the English courts.   In the case of *Collier* v. *Simpson*, 5 Car. and Payne's N. P. R. 73, it was decided that medical books are not admissible in evidence, though professional witnesses may be asked the grounds of their judgment and opinion, which might in some degree be founded on those books, as a part of their general knowledge.

Judge Abbot, on the trial of Donal for poisoning, refused an appeal to the works of Thénard, and said, " We cannot take the fact from any publication ; we cannot take the fact as related by any stranger."   But in the trial of Spencer Cooper, the court permitted medical authorities to be read. (Gay's Forensic Medicine, 11.)   And Dr. Beck, in his excellent work on Medical Jurisprudence, 2 vol., 666, states that in this country an objection has never been made to the introduction of authority, or the observation of others, as testimony by medical men.   In this, we think the author mistaken, for an appeal to medical authorities has been disallowed by some of the courts in this country ; though physicians, when testifying, are permitted to refer to medical authors, and to quote their opinions from memory.   Being permitted to refer to and quote authors, we can see no good reason why they may not read the views and opinions of distinguished authors.   The opinions of an author, as contained in his works, we regard as better evidence than the mere statement of those opinions by a witness, who testifies as to his recollection of them from former reading.   Is not the latter *secondary* to the former ?   On the whole, we think it the safest rule to admit standard medical books as evidence of the author's opinions upon questions of medical skill or practice, involved in a trial.   This rule appears to us the most accordant with well-established principles of evidence.

Judgment reversed.